**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ADVOCATE CHRIST MEDICAL CENTER
a/k/a Advocate Christian Hospital
4440 West 95th Street
Oak Lawn, IL 60453;

ADVOCATE CONDELL MEDICAL CENTER
801 South Milwaukee Avenue
Libertyville, IL 60048;

ADVOCATE ILLINOIS MASONIC MEDICAL CENTER
a/k/a Advocate Northside Health System
836 West Wellington Avenue
Chicago, IL 60657;

ADVOCATE SHERMAN HOSPITAL
1425 North Randall Road
Elgin, IL 60123;

ADVOCATE SOUTH SUBURBAN HOSPITAL
17800 South Kedzie Avenue
Hazel Crest, IL 60429;

ADVOCATE TRINITY HOSPITAL
2320 East 93rd Street
Chicago, IL 60617;

ANDALUSIA HEALTH
a/k/a Andalusia Regional Hospital
849 South Three Notch Street
Andalusia, AL 36420;

ANDERSON HOSPITAL
6800 State Route 162
Maryville, IL 62062;

ASHLEY REGIONAL MEDICAL CENTER
f/k/a Ashley Valley Medical Center
150 West 100 North
Vernal, UT 84078;

Civil Action No. _____

ASPIRUS RIVERVIEW HOSPITAL
410 Dewey Street
Wisconsin Rapids, WI 54494;

AUGUSTA HEALTH
a/k/a Augusta Medical Center
78 Medical Center Drive
Fishersville, VA 22939;

BAPTIST EASLEY
200 Fleetwood Drive
Easley, SC 29640;

BAPTIST HEALTH FLOYD
a/k/a Floyd Memorial Hospital
1850 State Street
New Albany, IN 47150;

BAPTIST HEALTH MEDICAL CENTER - LITTLE
ROCK
9601 Interstate 630, Exit 7
Little Rock, AR 72205;

BAPTIST HEALTH MEDICAL CENTER - NORTH
LITTLE ROCK
a/k/a Baptist Health Medical Center
3333 Springhill Drive
North Little Rock, AR 72117;

BAPTIST HEALTH MEDICAL CENTER-HOT SPRING
COUNTY
a/k/a Hot Spring County Medical Center
1001 Schneider Drive
Malvern, AR 72104;

BAXTER REGIONAL MEDICAL CENTER
624 Hospital Drive
Mountain Home, AR 72653;

BEAUMONT HOSPITAL - FARMINGTON HILLS
f/k/a Botsford General Hospital
28050 Grand River Avenue
Farmington Hills, MI 48336;

BORGESS MEDICAL CENTER
1521 Gull Road
Kalamazoo, MI 49048;

CAPE REGIONAL MEDICAL CENTER
Two Stone Harbor Boulevard
Cape May Court House, NJ 08210;

CARLE FOUNDATION HOSPITAL
611 West Park Street
Urbana, IL 61801;

CAROMONT REGIONAL MEDICAL CENTER
f/k/a Gaston Memorial Hospital
2525 Court Drive
Gastonia, NC 28054;

CARONDELET HEART & VASCULAR INSTITUTE
f/k/a St. Mary's Hospital
1601 West Saint Mary's Road
Tucson, AZ 85745;

CARONDELET SAINT JOSEPH'S HOSPITAL
350 North Wilmot Road
Tucson, AZ 85711;

CARONDELET SAINT MARY'S HOSPITAL
1601 West Saint Mary's Road
Tucson, AZ 85745;

CASTLEVIEW HOSPITAL
300 North Hospital Drive
Price, UT 84501;

CENTEGRA HOSPITAL - MCHENRY
a/k/a Northern Illinois Medical Center
4201 Medical Center Drive
McHenry, IL 60050;

CENTEGRA HOSPITAL - WOODSTOCK
a/k/a Memorial Medical Center
3701 Doty Road
Woodstock, IL 60098;

CHRISTUS GOOD SHEPHERD MEDICAL CENTER
700 East Marshall Avenue
Longview, TX 75601;

CHRISTUS GOOD SHEPHERD MEDICAL CENTER
MARSHALL
811 South Washington
Marshall, TX 75670;

CLARK MEMORIAL HOSPITAL
1220 Missouri Avenue
Jeffersonville, IN 47130;

COMANCHE COUNTY MEMORIAL HOSPITAL
3401 West Gore Boulevard
Lawton, OK 73505;

COMMUNITY HOSPITAL
a/k/a Community Healthcare System
901 MacArthur Boulevard
Munster, IN 46321;

COMMUNITY HOSPITAL ANDERSON
1515 North Madison Avenue
Anderson, IN 46011;

COMMUNITY HOSPITAL EAST
a/k/a Community Hospitals of Indiana, Inc.
1500 North Ritter Avenue
Indianapolis, IN 46219;

COMMUNITY HOSPITAL NORTH
7150 Clearvista Drive
Indianapolis, IN 46256;

COMMUNITY HOWARD REGIONAL HEALTH
3500 South Lafountain Street
Kokomo, IN 46902;

CONWAY REGIONAL MEDICAL CENTER
2302 College Avenue
Conway, AR 72034;

DANVILLE REGIONAL MEDICAL CENTER
a/k/a Danville Regional Hospital
142 South Main Street
Danville, VA 24541;

DEARBORN COUNTY HOSPITAL
600 Wilson Creek Road
Lawrenceburg, IN 47025;

DEKALB MEMORIAL HOSPITAL
1316 East Seventh Street
Auburn, IN 46706;

EAST ALABAMA MEDICAL CENTER
2000 Pepperell Parkway
Opelika, AL 36801;

ELKHART GENERAL HOSPITAL
600 East Boulevard
Elkhart, IN 46514;

FAIRFIELD MEDICAL CENTER
401 North Ewing Street
Lancaster, OH 43130;

FAYETTE REGIONAL HEALTH SYSTEM
1941 Virginia Avenue
Connersville, IN 47331;

FIRELANDS REGIONAL MEDICAL CENTER - MAIN
CAMPUS
1111 Hayes Avenue
Sandusky, OH 44870;

FITZGIBBON HOSPITAL
a/k/a John Fitzgibbon Memorial Hospital
2305 South Highway 65
Marshall, MO 65340;

FLUSHING HOSPITAL MEDICAL CENTER
4500 Parsons Boulevard
Flushing, NY 11355;

FRANCISCAN HEALTH HAMMOND
a/k/a Franciscan Saint Margaret Health - Hammond
Campus
5454 Hohman Avenue
Hammond, IN 46320;

FRANCISCAN HEALTH INDIANAPOLIS
f/k/a Franciscan Saint Francis Health - Indianapolis
8111 South Emerson Avenue
Indianapolis, IN 46237;

FRANCISCAN HEALTH MICHIGAN CITY
a/k/a Franciscan St. Anthony Health - Michigan City
301 West Homer Street
Michigan City, IN 46360;

FRANCISCAN HEALTH OLYMPIA FIELDS CAMPUS
a/k/a Franciscan Alliance St. James Hospital and Health
Center
20201 South Crawford Avenue
Olympia Fields, IL 60461;

FRANCISCAN SAINT FRANCIS HEALTH - BEECH
GROVE CAMPUS
1600 Albany Street
Beech Grove, IN 46107;

FROEDTERT & MEDICAL COLLEGE OF WISCONSIN
a/k/a Froedtert Memorial Lutheran Hospital
9200 West Wisconsin Avenue
Milwaukee, WI 53226;

GENESYS REGIONAL MEDICAL CENTER
One Genesys Parkway
Grand Blanc, MI 48439;

GOOD SAMARITAN HOSPITAL
520 South Seventh Street
Vincennes, IN 47591;

GUNDERSEN LUTHERAN MEDICAL CENTER
1900 South Avenue
La Crosse, WI 54601;

GWINNETT MEDICAL CENTER - LAWRENCEVILLE
a/k/a Gwinnett Hospital System
1000 Medical Center Boulevard
Lawrenceville, GA 30046;

HANCOCK REGIONAL HOSPITAL
801 North State Street
Greenfield, IN 46140;

HAVASU REGIONAL MEDICAL CENTER
101 Civic Center Lane
Lake Havasu City, AZ 86403;

HEALTHMARK REGIONAL MEDICAL CENTER
4413 United States Highway 331 South
Defuniak Springs, FL 32435;

HENRY COMMUNITY HEALTH
a/k/a Henry County Memorial Hospital
1000 North 16th Street
New Castle, IN 47362;

HIGH POINT REGIONAL HEALTH
601 North Elm Street
High Point, NC 27262;

HOLLAND HOSPITAL
602 Michigan Avenue
Holland, MI 49423;

INDIANA UNIVERSITY HEALTH BALL MEMORIAL
HOSPITAL
2401 West University Avenue
Muncie, IN 47303;

INDIANA UNIVERSITY HEALTH BLOOMINGTON
HOSPITAL
601 West Second Street
Bloomington, IN 47403;

INDIANA UNIVERSITY HEALTH MORGAN
HOSPITAL
2209 John R. Wooden Drive
Martinsville, IN 46151;

IREDELL MEMORIAL HOSPITAL
557 Brookdale Drive
Statesville, NC 28677;

JACKSON PURCHASE MEDICAL CENTER
1099 Medical Center Circle
Mayfield, KY 42066;

JAMAICA HOSPITAL MEDICAL CENTER
8900 Vanwyck Expressway
Jamaica, NY 11418;

JOHN H. STROGER, JR. HOSPITAL OF COOK
COUNTY
1969 West Ogden Avenue
Chicago, IL 60612;

JOHN T. MATHER MEMORIAL HOSPITAL
75 North Country Road
Port Jefferson, NY 11777;

JOHNSON MEMORIAL HOSPITAL
1125 West Jefferson Street
Franklin, IN 46131;

KARMANOS CANCER INSTITUTE
4100 John R Street
Detroit, MI 48201;

KENT HOSPITAL
a/k/a Kent County Memorial Hospital
455 Toll Gate Road
Warwick, RI 02886;

KING'S DAUGHTERS' HOSPITAL & HEALTH
SERVICES
1373 East State Road 62
Madison, IN 47250;

LA PORTE HOSPITAL
1007 Lincolnway
La Porte, IN 46350;

LAKE CUMBERLAND REGIONAL HOSPITAL
305 Langdon Street
Somerset, KY 42503;

LAKELAND COMMUNITY HOSPITAL
42024 Highway 195
Haleyville, AL 35565;

LITTLE COMPANY OF MARY HOSPITAL
2800 West 95th Street
Evergreen Park, IL 60805;

LIVINGSTON REGIONAL HOSPITAL
315 Oak Street
Livingston, TN 38570;

LOGAN MEMORIAL HOSPITAL
1625 Nashville Road
Russellville, KY 42276;

LOURDES HOSPITAL
169 Riverside Drive
Binghamton, NY 13905;

MARION GENERAL HOSPITAL
441 North Wabash Avenue
Marion, IN 46952;

MAYO CLINIC HEALTH SYSTEM IN EAU CLAIRE
a/k/a Eau Claire Hospital
1221 Whipple Street
Eau Claire, WI 54703;

MCLAREN BAY REGION
1900 Columbus Avenue
Bay City, MI 48708;

MCLAREN CENTRAL MICHIGAN
1221 South Drive
Mount Pleasant, MI 48858;

MCLAREN FLINT
401 South Ballenger Highway
Flint, MI 48532;

MCLAREN LAPEER REGION
1375 North Main Street
Lapeer, MI 48446;

MCLAREN MACOMB
1000 Harrington Boulevard
Mount Clemens, MI 48043;

MCLAREN OAKLAND
50 North Perry Street
Pontiac, MI 48342;

MCLAREN PORT HURON HOSPITAL
1221 Pine Grove Avenue
Port Huron, MI 48060;

MEMORIAL HOSPITAL
a/k/a Memorial Hospital of South Bend
615 North Michigan Street
South Bend, IN 46601;

MEMORIAL HOSPITAL OF MARTINSVILLE AND
HENRY COUNTY
320 Hospital Drive
Martinsville, VA 24115;

MEMORIAL HOSPITAL OF RHODE ISLAND
111 Brewster Street
Pawtucket, RI 02860;

MEMORIAL MEDICAL CENTER
2450 South Telshor Boulevard
Las Cruces, NM 88011;

MERCY HEALTH PARTNERS - HACKLEY CAMPUS
1700 Clinton Street
Muskegon, MI 49442;

MERCY HEALTH PARTNERS - MERCY CAMPUS
1500 East Sherman Boulevard
Muskegon, MI 49444;

MERCY HEALTH SAINT MARY'S
a/k/a Saint Mary's Health Care
200 Jefferson Street, Southeast
Grand Rapids, MI 49503;

MERCY REGIONAL MEDICAL CENTER
a/k/a Ville Platte Medical Center
800 East Main Street
Ville Platte, LA 70586;

METHODIST HOSPITAL
1305 North Elm Street
Henderson, KY 42420;

METHODIST HOSPITAL OF CHICAGO
5025 North Paulina
Chicago, IL 60640;

METHODIST HOSPITALS - NORTHLAKE CAMPUS
600 Grant Street
Gary, IN 46402;

MHP MEDICAL CENTER
f/k/a Major Hospital
2451 Intelliplex Drive
Shelbyville, IN 46176;

MINDEN MEDICAL CENTER
One Medical Plaza
Minden, LA 71055;

MIZELL MEMORIAL HOSPITAL
702 North Main Street
Opp, AL 36467;

MOUNT CARMEL SAINT ANN'S
a/k/a St. Ann's Hospital
500 South Cleveland Avenue
Westerville, OH 43081;

MOUNT CARMEL WEST
793 West State Street
Columbus, OH 43222;

MOUNT SAINT MARY'S HOSPITAL AND HEALTH
CENTER
5300 Military Road
Lewiston, NY 14092;

MOUNT SINAI HOSPITAL
1500 South Fairfield Avenue
Chicago, IL 60608;

NORTH ARKANSAS REGIONAL MEDICAL CENTER
620 North Main
Harrison, AR 72601;

NORTH GEORGIA MEDICAL CENTER
1362 South Main Street
Ellijay, GA 30540;

NORTHWEST MEDICAL CENTER
1530 US Highway 43
Winfield, AL 35594;

NORTHWESTERN MEDICINE KISHWAUKEE
HOSPITAL
a/k/a Kishwaukee Community Hospital
One Kish Hospital Drive
DeKalb, IL 60115;

OAK FOREST HOSPITAL OF COOK COUNTY
15900 South Cicero Avenue
Oak Forest, IL 60452;

OHIO VALLEY MEDICAL CENTER
2000 Eoff Street
Wheeling, WV 26003;

OPELOUSAS GENERAL HOSPITAL - SOUTH
CAMPUS
a/k/a Doctors Hospital of Opelousas
3983 I-49 South Service Road
Opelousas, LA 70570;

PALESTINE REGIONAL MEDICAL CENTER
2900 South Loop 256
Palestine, TX 75801;

PALMETTO HEALTH BAPTIST
Taylor at Marion Streets
Columbia, SC 29220;

PALMETTO HEALTH RICHLAND
5 Richland Medical Park Drive
Columbia, SC 29203;

PARKRIDGE WEST HOSPITAL
a/k/a Grandview Medical Center
1000 Highway 28
Jasper, TN 37347;

PARKVIEW REGIONAL HOSPITAL
600 South Bonham Street
Mexia, TX 76667;

PARKVIEW REGIONAL MEDICAL CENTER
11109 Parkview Plaza Drive
Fort Wayne, IN 46845;

PLEASANT VALLEY HOSPITAL
2520 Valley Drive
Point Pleasant, WV 25550;

PRINCETON COMMUNITY HOSPITAL
122 Twelfth Street
Princeton, WV 24740;

PROMEDICA BAY PARK HOSPITAL
a/k/a Bay Park Community Hospital
2801 Bay Park Drive
Oregon, OH 43616;

PROMEDICA BIXBY HOSPITAL
a/k/a Bixby Medical Center
818 Riverside Avenue
Adrian, MI 49221;

PROMEDICA FLOWER HOSPITAL
5200 Harroun Road
Sylvania, OH 43560;

PROMEDICA MONROE REGIONAL HOSPITAL
f/k/a Mercy Memorial Hospital
718 North Macomb Street
Monroe, MI 48162;

PROMEDICA TOLEDO HOSPITAL
2142 North Cove Boulevard
Toledo, OH 43606;

PROVIDENCE HEALTH CENTER
6901 Medical Parkway
Waco, TX 76712;

PROVIDENCE HOSPITAL
6801 Airport Boulevard
Mobile, AL 36685;

PROVIDENCE HOSPITAL
1150 Varnum Street, Northeast
Washington, DC 20017;

PROVIDENCE-PROVIDENCE PARK HOSPITAL
SOUTHFIELD CAMPUS
16001 West 9 Mile Road
Southfield, MI 48075;

PROVIDENT HOSPITAL OF COOK COUNTY
500 East 51st Street
Chicago, IL 60615;

PUTNAM COMMUNITY MEDICAL CENTER
611 Zeagler Drive
Palatka, FL 32177;

RALEIGH GENERAL HOSPITAL
1710 Harper Road
Beckley, WV 25801;

REGIONAL MEDICAL CENTER OF ORANGEBURG &
CALHOUN COUNTIES
a/k/a The Regional Medical Center
3000 Saint Matthews Road
Orangeburg, SC 29118;

REID HOSPITAL
1100 Reid Parkway
Richmond, IN 47374;

RIVER PARISHES HOSPITAL
500 Rue De Santé
LaPlace, LA 70068;

RIVERVIEW HEALTH
395 Westfield Road
Noblesville, IN 46060;

RMC ANNISTON
a/k/a Northeast Alabama Regional Medical Center
400 East Tenth Street
Anniston, AL 36202;

RUSH-COPLEY MEDICAL CENTER
a/k/a Copley Memorial Hospital
2000 Ogden Avenue
Aurora, IL 60504;

RUSSELL MEDICAL CENTER
3316 Highway 280
Alexander City, AL 35010;

SAINT AGNES MEDICAL CENTER
1303 East Herndon Avenue
Fresno, CA 93720;

SAINT BERNARD HOSPITAL AND HEALTH CARE
CENTER
326 West 64th Street
Chicago, IL 60621;

SAINT CATHERINE HOSPITAL
4321 Fir Street
East Chicago, IN 46312;

SAINT FRANCIS HOSPITAL
333 Laidley Street
Charleston, WV 25301;

SAINT FRANCIS HOSPITAL MUSKOGEE
a/k/a Muskogee Regional Medical Center
300 Rockefeller Drive
Muskogee, OK 74401;

SAINT JOHN DETROIT RIVERVIEW HOSPITAL
a/k/a St. John Health
7733 East Jefferson Avenue
Detroit, MI 48214;

SAINT JOHN HOSPITAL AND MEDICAL CENTER
22101 Moross
Detroit, MI 48236;

SAINT JOHN MACOMB-OAKLAND HOSPITAL,
MADISON HEIGHTS
27351 Dequindre
Madison Heights, MI 48071;

SAINT JOHN MACOMB-OAKLAND HOSPITAL,
WARREN CAMPUS
11800 East 12 Mile Road
Warren, MI 48093;

SAINT JOHN NORTH SHORES HOSPITAL
26755 Ballard Road
Harrison Township, MI 48045;

SAINT JOHN RIVER DISTRICT HOSPITAL
4100 River Road
East China Township, MI 48054;

SAINT JOSEPH MERCY LIVINGSTON HOSPITAL
620 Byron Road
Howell, MI 48843;

SAINT JOSEPH MERCY OAKLAND
a/k/a St. Joseph Mercy Hospital
44405 Woodward Avenue
Pontiac, MI 48341;

SAINT LUKE'S HOSPITAL
5901 Monclova Road
Maumee, OH 43537;

SAINT MARY MEDICAL CENTER
1500 South Lake Park Avenue
Hobart, IN 46342;

SAINT MARY'S HOSPITAL
a/k/a Seton Health System
1300 Massachusetts Avenue
Troy, NY 12180;

SAINT MARY'S HOSPITAL AT AMSTERDAM
a/k/a St. Mary's Healthcare
427 Guy Park Avenue
Amsterdam, NY 12010;

SAINT THOMAS DEKALB HOSPITAL
a/k/a Dekalb Community Hospital
520 West Main Street
Smithville, TN 37166;

SAINT THOMAS HIGHLANDS HOSPITAL
a/k/a Highlands Medical Center
401 Sewell Drive
Sparta, TN 38583;

SAINT THOMAS RIVER PARK HOSPITAL
1559 Sparta Road
McMinnville, TN 37110;

SAINT THOMAS STONES RIVER HOSPITAL
324 Doolittle Road
Woodbury, TN 37190;

SAINT VINCENT ANDERSON REGIONAL HOSPITAL
2015 Jackson Street
Anderson, IN 46016;

SAINT VINCENT EVANSVILLE
f/k/a St. Mary's Medical Center
3700 Washington Avenue
Evansville, IN 47750;

SAINT VINCENT INDIANAPOLIS HOSPITAL
a/k/a St. Vincent Hospital & Health Center
2001 West 86th Street
Indianapolis, IN 46260;

SAINT VINCENT KOKOMO
f/k/a St. Joseph Hospital and Health Center
1907 West Sycamore Street
Kokomo, IN 46901;

SAINT VINCENT'S BIRMINGHAM
a/k/a St. Vincent's Hospital
810 Saint Vincent's Drive
Birmingham, AL 35205;

SAINT VINCENT'S BLOUNT
150 Gilbreath Drive
Oneonta, AL 35121;

SAINT VINCENT'S EAST
50 Medical Park East Drive
Birmingham, AL 35235;

SAINT VINCENT'S MEDICAL CENTER
2800 Main Street
Bridgeport, CT 06606;

SAINT VINCENT'S MEDICAL CENTER RIVERSIDE
a/k/a St. Vincent's Medical Center
1 Shircliff Way
Jacksonville, FL 32204;

SAINT VINCENT'S MEDICAL CENTER SOUTHSIDE
f/k/a St. Luke's Hospital
4201 Belfort Road
Jacksonville, FL 32216;

SALINE MEMORIAL HOSPITAL
1 Medical Park Drive
Benton, AR 72015;

SCHNECK MEDICAL CENTER
a/k/a Jackson Co Schneck Memorial Hospital
411 West Tipton Street
Seymour, IN 47274;

SETON MEDICAL CENTER AUSTIN
a/k/a Seton Medical Center
1201 West 38th Street
Austin, TX 78705;

SETON MEDICAL CENTER WILLIAMSON
201 Seton Parkway
Round Rock, TX 78665;

SETON NORTHWEST HOSPITAL
11113 Research Boulevard
Austin, TX 78759;

SIDNEY AND LOIS ESKENAZI HOSPITAL
f/k/a Wishard Memorial Hospital
720 Eskenazi Avenue
Indianapolis, IN 46202;

SKOKIE HOSPITAL
a/k/a Rush North Shore Medical Center
9600 Gross Point Road
Skokie, IL 60076;

SOUTH SHORE HOSPITAL
8012 South Crandon Avenue
Chicago, IL 60617;

SOUTHERN TENNESSEE MEDICAL CENTER-
WINCHESTER
185 Hospital Road
Winchester, TN 37398;

SOUTHERN TENNESSEE REGIONAL HEALTH
SYSTEM-LAWRENCEBURG
f/k/a Crockett Hospital
1605 South Locust Avenue, Hwy 43
Lawrenceburg, TN 38464;

SOUTHERN TENNESSEE REGIONAL HEALTH
SYSTEM-PULASKI
f/k/a Hillside Hospital
1265 East College Street
Pulaski, TN 38478;

SPECTRUM HEALTH BUTTERWORTH HOSPITAL
100 Michigan Street Northeast
Grand Rapids, MI 49503;

ST. BERNARDS MEDICAL CENTER
225 East Jackson
Jonesboro, AR 72401;

STARKE HOSPITAL
102 East Culver Road
Knox, IN 46534;

STONEWALL JACKSON MEMORIAL HOSPITAL
230 Hospital Plaza
Weston, WV 26452;

SUMNER REGIONAL MEDICAL CENTER
555 Hartsville Pike
Gallatin, TN 37066;

THOMAS MEMORIAL HOSPITAL
4605 MacCorkle Avenue Southwest
South Charleston, WV 25309;

UNC LENOIR HEALTH CARE
a/k/a Lenoir Hospital
100 Airport Road
Kinston, NC 28501;

UNITY HEALTH WHITE COUNTY MEDICAL
CENTER
3214 East Race Avenue
Searcy, AR 72143;

UNIVERSITY MEDICAL CENTER AT
BRACKENRIDGE
a/k/a Brackenridge Hospital
601 East 15th Street
Austin, TX 78701;

UNIVERSITY OF ILLINOIS MEDICAL CENTER
1740 West Taylor Street
Chicago, IL 60612;

UNIVERSITY OF IOWA HOSPITALS & CLINICS
200 Hawkins Drive
Iowa City, IA 52242;

UNIVERSITY OF VIRGINIA MEDICAL CENTER
1215 Lee Street
Charlottesville, VA 22908;

VALLEY VIEW MEDICAL CENTER
5330 South Highway 95
Fort Mohave, AZ 86426;

VANDERBILT UNIVERSITY HOSPITAL
1211 Medical Center Drive
Nashville, TN 37232;

VAUGHAN REGIONAL MEDICAL CENTER
1015 Medical Center Parkway
Selma, AL 36701;

VIRGINIA HOSPITAL CENTER
1701 North George Mason Drive
Arlington, VA 22205;

WAKEMED CARY HOSPITAL
1900 Kildaire Farm Road
Cary, NC 27518;

WAKEMED RALEIGH HOSPITAL
a/k/a Wakemed Raleigh Campus
3000 New Bern Avenue
Raleigh, NC 27610;

WARREN MEMORIAL HOSPITAL
1000 North Shenandoah Avenue
Front Royal, VA 22630;

WASHINGTON REGIONAL MEDICAL CENTER
3215 North Hills Boulevard
Fayetteville, AR 72703;

WAYNE UNC HEALTH CARE
a/k/a Wayne Memorial Hospital, Inc.
2700 Wayne Memorial Drive
Goldsboro, NC 27534;

WESTERN PLAINS MEDICAL COMPLEX
3001 Avenue A
Dodge City, KS 67801;

WILLAMETTE VALLEY MEDICAL CENTER
2700 Southeast Stratus Avenue
McMinnville, OR 97128;

WINCHESTER MEDICAL CENTER
1840 Amherst Street
Winchester, VA 22601;

WITHAM MEMORIAL HOSPITAL
2605 North Lebanon Street
Lebanon, IN 46052;

WOMEN & INFANTS HOSPITAL
a/k/a Women & Infants Hospital of Rhode Island
101 Dudley Street
Providence, RI 02905; and

WOOSTER COMMUNITY HOSPITAL
1761 Beall Avenue
Wooster, OH 44691

        Plaintiffs,

    v.

THOMAS E. PRICE, M.D.
Secretary, United States Department of
Health and Human Services,

        Defendant.

**COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY JUDGMENT**

1.      The above-captioned two hundred thirteen (213) Plaintiff hospitals (hereinafter "Plaintiffs" or "Providers"), by and through their undersigned counsel, bring this action against defendant Thomas E. Price, M.D., in his official capacity as the Secretary ("Secretary") of the United States Department of Health and Human Services ("HHS"), and state as follows:

**NATURE OF ACTION**

2.      This is an action for judicial review, pursuant to 42 U.S.C. § 1395*oo*(f)(1), of a final decision of the Secretary of the Department of Health and Human Services denying the Plaintiffs' challenges to the calculation of their Medicare disproportionate share hospital ("DSH") adjustments for the services they furnished to low-income patients during multiple fiscal years between 2006 and 2009.  That final administrative decision is attached hereto as **Exhibit 1**, and is incorporated herein by reference.

3.      The Plaintiffs maintain that their DSH reimbursement calculations were understated due to the failure of the Centers for Medicare and Medicaid Services ("CMS") and the relevant Medicare Administrative Contractors ("MAC" or "contractor") to include all supplemental security income ("SSI") eligible patient days in the numerator of the Medicare fraction of the Medicare DSH calculation as required by 42 U.S.C. § 1395ww(d)(5)(F) (the "DSH statute").

4.      In enacting the statute, Congress intended the Medicare DSH payment to compensate hospitals, like the Plaintiffs in the instant case, that shoulder the financial burden of providing care to a disproportionate number of low-income patients.  It is based on a proxy

measure for a hospital's low-income patient utilization which is the sum of two fractions expressed as a percentage.  *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi); 42 C.F.R. § 412.106(b).

5.      At the hearings before the Secretary's administrative tribunal, the Provider Reimbursement Review Board ("PRRB" or "Board"), the Plaintiffs established that the Secretary used a legally flawed method to count the patient days included in the numerator of the Providers' respective Medicare fractions.

6.      As the DSH statute is currently construed by the Secretary, a hospital patient is "entitled" to Medicare Part A benefits regardless of whether Medicare covers or pays for his or her hospitalization, but that same patient is "entitled" to SSI benefits only if he or she actually receives an SSI payment from the Social Security Administration ("SSA") during the month of his or her hospitalization.

7.      As explained below, the Secretary's construction of the term "entitled" in the DSH statute violates the Medicare Act, because it contravenes the statute's plain meaning and intent.  It is also arbitrary and capricious, not in accordance with law, and in excess of statutory authority.

8.      As a result of the Secretary's erroneous construction of the statute, the Plaintiffs have been denied Medicare DSH payments to which they are lawfully entitled.  The Plaintiffs therefore seek declaratory and injunctive relief against the Secretary, and an order setting aside the MACs' invalid payment determinations and directing the recalculation of the Plaintiffs' DSH adjustments in accordance with the plain meaning of the statute.

## JURISDICTION AND VENUE

9.      This case arises under Title XVIII of the Social Security Act, as amended, 42 U.S.C. § 1395, *et seq.* (the "Medicare Act"); the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.*; and the Declaratory Judgment Act, 28 U.S.C. § 2201, to obtain judicial review of a final decision

of the Secretary denying Plaintiffs' additional Medicare reimbursement for their fiscal years between 2006 and 2009.

10.    Jurisdiction is proper under 42 U.S.C. § 1395*oo*(f)(1), as an appeal of a final Medicare program agency action, and 28 U.S.C. § 1331, as a general federal question.

11.    Jurisdiction also lies pursuant to 28 U.S.C. § 1361 because the Plaintiffs are entitled to a writ of mandamus requiring the Secretary to ensure that the Providers' DSH adjustments are calculated in accordance with the law from the best available data and to produce the same to the Plaintiffs for review.

12.    Venue is proper in this judicial district pursuant to 42 U.S.C. § 1395*oo*(f)(1) and 28 U.S.C. § 1391(e).

## PARTIES

13.    During the cost reporting periods at issue herein, all Plaintiffs were participating providers of hospital services under the federal Medicare program pursuant to Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.* All of the Plaintiffs are included on the "schedules of providers" appended to two decisions the PRRB issued in this matter, which are attached hereto as **Exhibits 2 and 3**. The schedules of providers enumerate every claim the Plaintiffs appealed to the PRRB that are subject to this appeal, and all Plaintiffs are identified by their Medicare provider numbers, names and applicable fiscal years subject to this appeal.[1]

14.    At all times relevant to these proceedings, all Plaintiffs had a Medicare provider agreement with the Secretary, and each was eligible to participate in the Medicare program. At all

---

[1] Plaintiff Franciscan Health Indianapolis ("FHI"), f/k/a Franciscan Saint Francis Health, Provider No. 15-0162, had its appeal for its FYE 12/31/2006 reinstated into PRRB Case No. 13-2190GC, from which it was previously dismissed. FHI appealed the dismissal to the U.S. District Court for the Southern District of Indiana, Case No. 1:16CV-03142, and the parties have filed a Joint Motion to remand and reinstate FHI's claim in PRRB Case No. 13-2190GC. Consequently, FHI's appeal of its 2006 fiscal year is also ripe for review.

times relevant hereto, each Plaintiff was an acute-care, inpatient hospital that served a disproportionate share of low-income patients.

15.     The Defendant is Thomas E. Price, M.D., in his official capacity as Secretary of the United States Department of Health and Human Services ("HHS"), the federal agency that administers the Medicare program.  References to the Secretary herein are meant to refer to him, to his subordinates and to his official predecessors or successor as the context requires.

16.     The Centers for Medicare and Medicaid Services ("CMS") is a component of HHS with responsibility for day-to-day operation and administration of the Medicare program.  CMS was formerly known as the Health Care Financing Administration.  References to CMS herein are meant to refer to the agency and its predecessors.

## THE MEDICARE PROGRAM

17.     Medicare is a federal program that provides health insurance for the aged, disabled and certain individuals with end-stage renal disease.  42 U.S.C. § 1395, *et seq*.  The Medicare program is federally funded and is administered by the Secretary through CMS and its contractors. 42 U.S.C. §§ 1395kk and 1395kk-1.

18.     The Medicare Act is composed of five parts.  *See* 42 U.S.C. § 1395, *et seq*.

19.     Part A of the Medicare Act covers "inpatient hospital services."  *See* 42 U.S.C. §§ 426(c), 1395c, *et seq*.

20.     Part B is an optional program that covers physician services and certain other outpatient medical services that are not covered under Part A, if a premium is paid.  *See* 42 U.S.C. §§ 1395j—1395w-6.

21.     Part C, known as the Medicare Advantage Program, allows participants to choose certain health plans as an alternative to the traditional fee-for-service model available under Parts A and B.  42 U.S.C. § 1395w-21(a).

22.     Part D, known as the Medicare Prescription Drug Benefit Program, was enacted as part of the Medicare Modernization Act of 2003 ("MMA"), Pub. L. 108-173, 117 Stat. 2066, which was signed into law on December 8, 2003.  As relevant here, Medicare Part D provides, *inter alia*, fully subsidized drug benefits for Supplemental Security Income ("SSI") beneficiaries.  42 U.S.C. §§ 1395w-101, 1395w-114; 42 C.F.R. § 423.773, 20 C.F.R. § 418.3105.  Part D coverage first began on January 1, 2006.  42 U.S.C. § 1395w-101(a)(2).

23.     Part E sets forth various miscellaneous provisions, including the Medicare Secondary Payer ("MSP") requirements for coordinating benefits and the Prospective Payment System ("PPS") for reimbursing Part A inpatient hospital services.  42 U.S.C. § 1395x, *et seq.*

24.     The Medicare Part A benefit consists of the right to have Medicare payment made on a beneficiary's behalf for a limited number of days of inpatient hospital care during a spell of illness.  *See* 42 U.S.C. §§ 426(a), 1395d(a)(1).  Specifically, the Part A benefit entitles an individual to have payment made on his or her behalf for up to 90 days of inpatient hospital services in a spell of illness, with a lifetime reserve of 60 additional days that a beneficiary may elect to use.  42 U.S.C. § 1395d(a)(1); 42 C.F.R. § 409.61(a).

## MEDICARE DSH PAYMENT

25.     Since 1983, the Medicare program has paid most hospitals under a "PPS" for inpatient hospital services furnished to an individual who is entitled to benefits under Medicare Part A.  42 U.S.C. §§ 1395ww(d)(1)-(5); 42 C.F.R. Part 412.

26.     Under the PPS, hospitals are reimbursed for providing inpatient services to Medicare beneficiaries at a predetermined rate based on the diagnosis-related grouping ("DRG") to which a patient is assigned.  Each DRG represents the average resources that are required to provide the inpatient services described by the particular DRG category relative to the national per case average for inpatient hospital services.  42 U.S.C. § 1395ww(d)(4) & (5).

27.     Medicare pays these predetermined, standardized amounts per hospital discharge, subject to certain upward payment adjustments for certain qualifying hospitals. *Id.*

28.     The standard rate paid under the PPS is based on a national average amount of operating costs incurred to treat a Medicare patient with the assigned DRG. *See id.* The payment per discharge is subject to further adjustments to account for additional hospital-specific factors that may cause a hospital to incur greater than average operating costs to treat each Medicare Part A patient. *See* 42 U.S.C. § 1395ww(d)(5).

29.     One of the PPS payment adjustments is the DSH payment.  42 U.S.C. § 1395ww(d)(5)(F); 42 C.F.R. § 412.106.  A hospital that serves a disproportionate share of low-income patients is entitled to an upward percentage adjustment to the standard payment rate per discharge under the prospective payment system. *Id.*

30.     The DSH adjustment is a percentage add-on to the standard payment rate per hospital discharge under the Part A prospective payment system.  It is intended to compensate a hospital for the higher-than-average costs of treating low-income Medicare beneficiaries whose care is paid under the Part A PPS. *See* H.R. Rep. No. 99-241, at 15 (1985), *reprinted in* 1986 U.S.C.C.A.N. 579, 593-94.  When it created the DSH adjustment, Congress identified two reasons why hospitals treating a disproportionate share of low-income patients have higher-than-average costs.  One reason is that low-income Medicare patients are more costly than average to treat; the other is that hospitals that treat a large proportion of low-income patients overall tend to incur higher costs per case for all patients due, in part, to the specialized services they provide and other structural characteristics of these hospitals. *Id.*

## THE DSH PAYMENT CALCULATION

31.     The calculation of the DSH Payment add-on turns on a hospital's "disproportionate patient percentage" ("DPP"), which is the sum of two fractions expressed as percentages. *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi); 42 C.F.R. §§ 412.106 (b)-(d).

32.     Generally, the greater the two percentages, the greater the DSH payment to a hospital.

33.     One of the two fractions used to calculate a hospital's DSH payment is commonly called the "Medicare fraction."  The statute defines the Medicare fraction as:

> the fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were *entitled to benefits under [P]art A of [Title XVIII]* and were *entitled to supplemental security income benefits* (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were *entitled to benefits under [P]art A of [Title XVIII.]*

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) (emphasis added).  As the italicized language indicates, the Medicare fraction consists solely of days for patients who were "entitled to benefits under Part A" of Medicare and "entitled to [SSI] benefits."  *Id.*  The denominator includes all patient days for which patients were "entitled to" Part A benefits; whereas the numerator includes only those Part A days for patients who were also "entitled to" supplemental security income benefits under Title XVI during the month in which they were hospitalized.

34.     The second of the two fractions used to compute a hospital's DSH payment is referred to as the "Medicaid fraction."  The statute defines the Medicaid fraction as:

> the fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consists of patients who (for such days) were *eligible for medical assistance under a State plan approved under [Title XIX]*, but who were *not entitled to benefits under [P]art A of [Title XVIII]*, and the denominator of which is the total number of the hospital's patient days for such period. [2]

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added).  As emphasized above, the numerator of the Medicaid fraction consists of days for patients who both were eligible for medical assistance under Title XIX, or Medicaid, and were "not entitled to benefits under [P]art A" of Title XVIII, or Medicare, for their "patient days" in the hospital.

35.     The SSI program is a federal program that provides benefits to low-income individuals who are either aged 65 or older, or are blind or disabled.  The SSI program is administered by the Social Security Administration ("SSA") under Title XVI, and provides financial and other benefits—including registering SSI enrollees for fully subsidized Medicare Part D prescription drug benefits through the Extra Help program.  *See* 42 U.S.C. § 1381, *et seq.*; 42 U.S.C. § 1395w-114; 42 C.F.R. § 423.773 and 20 C.F.R. § 418.3105; *see also* CMS Manual 100-18, Chapter 13, Premium and Cost-Sharing Subsidies for Low-Income Individuals, at §§ 40.2.2, 40.2.5, 70.5.2.

---

[2] This statute refers to "this subchapter," which means subchapter XVIII of Chapter 7 of Title 42 of the United States Code, also known as Title XVIII of the Social Security Act.

36.     To implement the DSH legislation, CMS determines the number of patient days for those patients entitled to both Medicare Part A and SSI by matching data from the Medicare Provider Analysis and Review ("MedPAR") file, which is Medicare's database of Provider inpatients, and the Medicare Enrollment Database (EDB), with a file created for CMS by SSA to identify SSI-entitled individuals.  75 Fed. Reg. 50,041, 50,277-81 (Aug. 16, 2010).

37.     CMS' payment and audit functions under the Medicare program are contracted out to insurance companies known as Medicare Administrative Contractors ("MAC").  The MACs determine payment amounts due the hospitals under Medicare law and regulations.  42 U.S.C. § 1395h, 42 C.F.R. § 413.20.  The MACs review the cost report, determine the total amount of Medicare reimbursement due the provider and issue the provider a Notice of Program Reimbursement ("NPR").  *See* 42 C.F.R. § 405.1803.

38.     A provider dissatisfied with the MAC's final determination of total reimbursement may file an appeal with the Board within 180 days of the issuance of the NPR (or a revised NPR ("RNPR")).  42 U.S.C. § 1395*oo*(a); 42 C.F.R. § 405.1835.

## SECRETARY'S CONSTRUCTION OF THE DSH STATUTE

39.     The composition of the numerator and denominator of both the Medicare and Medicaid fractions is determined by the meaning and intent of the terms "entitled" and "eligible" in the DSH statute.

40.     Over the last three decades, the Secretary has vacillated in his approach to construing the DSH statute, resulting in a litany of litigation and agency policy changes.

41.     Due to the significant impact of the meaning ascribed to the terms "entitled" and "eligible" in the DSH statute, the Secretary's construction of their meaning and their application to Providers' program reimbursement has been repeatedly challenged.

42.     On review, federal courts have effectively concluded that Congress used the terms "entitled" and "eligible" interchangeably and without meaningful distinction.  *See Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 12-13 (D.C. Cir. 2011)(noting that "the usual rule that Congress intends different meanings when it uses different words has little weight here …. [I]t would be a mistake to read too much into the difference in nomenclature")(collecting cases).

43.     Prior to October 1, 2004, the Secretary construed the term "entitled" in the DSH statute to mean that a patient was "entitled to benefits under Part A" of Medicare when Medicare Part A covered and paid for the patient's hospitalization.  For instance, if the patient's spell of illness exceeded 90 days such that his Part A benefits were exhausted, the patient was deemed not to be "entitled to" Part A Medicare benefits for purposes of the DSH calculation.  *See* 42 C.F.R. § 412.106(b)(2)(1)(2003); *see also* 51 Fed. Reg. 16,772, 16,788 (May 6, 1986); 51 Fed. Reg. 31,454, 31,460-61 (Sept. 3, 1986).  Thus, hospital days for which dual-eligible patients—patients eligible for both Medicare and Medicaid—had exhausted their Medicare Part A benefits were therefore excluded from the numerator and denominator of the Medicare fraction because such days were not "covered" by Medicare.  In accordance with this construction, the Secretary held that days attributable to patients who had exhausted their Medicare Part A benefits should be counted in the numerator of the Medicaid fraction if the person was eligible for Medicaid.  *See Presbyterian Med. Ctr. of Philadelphia v. Aetna Life Ins. Co.*, CMS Adm'r Dec., 96-D75, MEDICARE & MEDICAID GUIDE (CCH) ¶45,032 (Nov. 29, 1996).

44.     In 2003, however, the Secretary proposed to change the interpretation of the DSH statute in 68 Fed. Reg. 27,154, 27,201-08 (May 19, 2003).  In that notice of proposed rulemaking, the Secretary erroneously stated that the then-current policy required all dual-eligible days to be

counted in the Medicare fraction even after a Medicare beneficiary exhausted his or her Part A benefits.

45.     The Secretary did not act upon this proposal in the final PPS rule for federal fiscal year 2004.  68 Fed. Reg. 45,346, 45,422 (Aug. 1, 2003).

46.     A year later, however, in 2004, the Secretary reversed course and adopted what he then-acknowledged was a new policy:  to include Medicare Advantage days and Medicare Exhaust days in the Medicare fraction.  69 Fed. Reg. 48,916, 49,098-99 (Aug. 11, 2004)(acknowledging that the Secretary had never before counted Part A exhaust days in the Medicare fraction and explaining the misstatement he had made in the proposed rulemaking of May 19, 2003).

47.     The Secretary effected this change by striking the word "covered" from the existing Medicare fraction regulation, reflecting a fundamental change to the construction of the term "entitled" to benefits.   *Compare* 42 C.F.R. § 412.106(b)(2)(i) (2003) *with* 42 C.F.R. § 412.106(b)(2)(i) (2005); *see also* 69 Fed. Reg. 48,916, 49,246 (Aug. 11, 2004).

48.     In the summer of 2007, without providing notice or the opportunity to comment, the Secretary issued a technical correction to the regulation regarding CMS' policy on Medicare Advantage days.  Specifically, the Secretary amended the DSH regulation to conform the text to effectuate the "policy change" announced in the 2004 rulemaking, 72 Fed. Reg. 47,130, 47,384 (Aug. 22, 2007), to provide that the Medicare fraction included all patient days for "patients entitled to Medicare Part A (or Medicare Advantage (Part C))."  42 C.F.R. §§ 412.106(b)(2)(i)(B) and (iii)(B).  The stated effective date for the 2007 rule was October 1, 2007.  72 Fed. Reg. at 47,130.

49.     As with Medicare Advantage days, the Secretary's 2003 and 2004 rules did not expressly address the Agency's treatment of days attributable to Medicare Part A beneficiaries

33

whose Part A benefits were subject to Medicare Secondary Payer limitations, *i.e.*, whose healthcare services are not paid by Medicare because Medicare is secondary to a group health insurer or a third-party payer.  However, in its final IPPS rule for Fiscal Year 2006, the Agency noted it had "updated . . . [42 C.F.R.] § 412.106(b) to reflect the inclusion [in the Medicare Part A fraction] of days for which Medicare was not the primary payer."  70 Fed. Reg. 47,287, 47,441 (Aug. 12, 2005).

50.     None of these amendments discussed the broader impact of the changing definition of "entitled," or, in particular, its application to SSI enrollees.

51.     In 2008, this Court issued its memorandum opinion and order in *Baystate Medical Center v. Leavitt,* 545 F. Supp. 2d 20, *amended by* 587 F. Supp. 2d 37 (D.D.C. 2008), which required the Secretary to correct several systemic errors in his calculation of the Medicare fraction that uniformly deflated the numerator of the fraction and inflated the denominator, thus reducing the fraction overall and, as a result, reducing the DSH payments made to hospitals.

52.     In April 2010, the Secretary issued CMS Ruling 1498-R directing Medicare Administrative Contractors and advising hospitals that the interpretation of the DSH statute embodied in 42 C.F.R. § 412.106(b) applied to cost reporting periods preceding the October 1, 2004 effective date of the amendment and all pending appeals before the Provider Reimbursement Review Board.  *See* CMS Ruling No. CMS-1498-R (April 28, 2010).

53.     CMS Ruling 1498-R applied to three categories of appeals: (1) challenges to CMS' data matching process for matching Medicare and SSI entitlement data in determining the Medicare fraction; (2) challenges to the exclusion from the Medicaid fraction of the disproportionate patient percentage of non-covered inpatient hospital days; and (3) challenges to the exclusion from the DPP of labor/delivery room (LDR) inpatient days.

54. Pursuant to CMS Ruling 1498-R, any appeal involving any of the above three categories had to be remanded by the Board to the MAC. The Ruling further required the MAC to include certain inpatient provider days (*e.g.*, MSP and exhausted benefit days) in the Medicare fraction when it revised the Medicare fraction following remand.

55. CMS Ruling 1498-R also required CMS to re-compute the Medicare fraction using the revised SSI-data matching process mandated by the district court in *Baystate Medical Center v. Leavitt*, 545 F. Supp. 2d 20, *as amended*, 587 F. Supp. 2d 37, 44 (D.D.C. 2008).

56. CMS Ruling 1498-R was issued without advance notice to the public and without affording hospitals an opportunity for comment.

57. One month later, on May 4, 2010, the Secretary announced yet another proposed amendment to the DSH regulation to obviate any confusion made by the prior changes. "In order to further clarify our policy that patient days associated with [Medicare Advantage Plan] beneficiaries are to be included in the [Medicare] fraction because they are still entitled to benefits under Medicare Part A, we are proposing to replace the word 'or' with the word 'including' in [42 C.F.R.] § 412.106(b)(2)(i)(B) and § 412.106(b)(2)(iii)(B)." *See* 75 Fed. Reg. 24,000, 24,006-07.

58. The amendment to the regulation was adopted in the Final Rule dated August 16, 2010, without modification, *see* 75 Fed. Reg. 50,275, 50,286 (Aug. 16, 2010), resulting in multiple challenges to the amendment and its retroactive application. *See, e.g., Catholic Health Initiatives—Iowa Corp v. Sebelius*, 841 F. Supp. 2d 270 (D.D.C. 2012), *rev'd*, 718 F.3d 914 (D.C. Cir. 2014); *Metropolitan Hosp. v. United States Dep't of Health & Human Servs.*, 702 F. Supp. 2d 808 (W.D. Mich. 2010), *rev'd*, 712 F.3d 248 (D.C. Cir. 2013).

59.     Ultimately, the courts upheld the Secretary's new, expansive interpretation of the term "entitled" in the phrase "entitled to benefits under [P]art A" as meaning the patient met the "qualifying Medicare statutory criteria."  *See, e.g., Catholic Health*, 718 F.3d 919-20; *see also* CMS Ruling No. CMS-1498-R2 at 1-10 (Apr. 22, 2015).

60.     Despite the Secretary's wholesale expansion of the meaning of "entitled to benefits under Medicare [P]art A" to include covered and non-covered inpatient days, the Secretary continues to construe the term "entitled to supplemental security income benefits" narrowly, to require a cash benefit payment from the Social Security Administration for the month of hospitalization.  The Secretary has continued to exclude from the numerator of the Medicare fraction SSI beneficiaries who were qualified for and enrolled in the SSI program during their inpatient hospitalizations but who did not receive a cash SSI stipend from SSA for that month. 75 Fed. Reg. 50,275-286 (Aug. 16, 2010); *see Metropolitan Hosp.*, 712 F.3d at 263-65.

61.     The Secretary construes two uses of the term "entitled" that appear in the same sentence of the Medicare fraction of the DSH statute differently, in contravention of well-established statutory principles.  *See Sorenson v. Secretary of Treasury*, 475 U.S. 851, 860 (1986)(identical words in same statute have same meaning).

62.     The Secretary takes the view that patients for whom Medicare Part A neither covers nor pays their inpatient hospitalizations are nevertheless entitled to Medicare Part A if they meet the qualifying statutory criteria for and are enrolled in the Medicare program.

63.     At the same time, the Secretary maintains that patients who qualify for and are enrolled in the SSI program are not entitled to SSI benefits absent their receipt of a cash payment from the SSA during the month in which they are hospitalized, even when the patient should have received a cash payment but did not for various administrative reasons.

64.     Under the SSI statute, however, every aged, blind or disabled individual whose income and resources meet the statutory criteria are SSI-qualified and entitled to SSI program benefits.  *See* 42 U.S.C. §§ 1381a & 1382.

65.     One of the benefits of SSI enrollment for beneficiaries who also have Medicare is fully subsidized Medicare Part D prescription drug benefits, irrespective of whether that SSI enrollee receives a monthly payment from the SSA, *i.e.*, an SSI check for the month in question. *See* 42 C.F.R. § 423.773 and 20 C.F.R. § 418.3105.

66.     The Secretary considers an SSA award letter to be sufficient evidence of the Medicare beneficiary's SSI entitlement to qualify that enrollee for a full Medicare Part D prescription drug benefit subsidy.  Centers for Medicare and Medicaid Services, Find Your Level of Extra Help (Part D), https://www.medicare.gov/your-medicare-costs/help-paying-costs/extra-help/level-of-extra-help.html; CMS Manual 100-18, Chapter 13, Premium and Cost-Sharing Subsidies for Low-Income Individuals, at §§ 40.2.2, 40.2.5.

67.     Because the Secretary has interpreted the term "entitled" in the DSH statute to mean meeting the eligibility criteria for a benefits program and does not require payment or receipt of program benefits, all SSI-eligible patients must be included in the numerator of the Medicare fraction.

68.     The Secretary's directive to include only those SSI beneficiaries who receive an SSI payment during the month in which they are hospitalized runs contrary to the plain language of the DSH statute and Congress's intent to have Medicare-entitled SSI enrollees serve as a proxy for low-income patients.

69.     The Secretary's incorrect and improper construction of the term "entitled" to SSI benefits thwarts Congress's intent and denies the Plaintiffs the reimbursement to which they are entitled.

## FACTUAL BACKGROUND RELEVANT TO PLAINTIFFS' ADMINISTRATIVE APPEALS

70.     Any Medicare provider dissatisfied with a final determination of the Medicare program regarding the provider's PPS payments for a "cost reporting period," *i.e.*, the provider's fiscal year, may appeal that determination to the PRRB following receipt of their NPR or RNPR.

71.     Pursuant to 42 U.S.C. § 1395*oo*(a) and (b) and 42 C.F.R. §§ 405.1835 and 405.1837, a hospital may file an appeal to the Board individually if the amount in controversy is $10,000 or more, or may file a group appeal of an issue that is common to two or more hospitals if the aggregate amount in controversy is $50,000.

72.     The Plaintiffs timely filed individual or group appeals with the PRRB, and argued that their DSH adjustments were understated due to the Secretary's categorical exclusion of SSI-eligible beneficiaries ("SSI enrollees") who did not receive an SSI payment for the month in which they were hospitalized from the numerator of the Medicare fraction.

73.     In their position papers and at hearings before the PRRB, the Plaintiffs established that the Secretary's construction of the statute conflicts with the DSH statute's plain language, meaning and intent.

74.     At their hearings, Plaintiffs demonstrated that the Secretary's erroneous reading of Title XVI, 42 U.S.C. § 1381, *et seq*., and his reliance on the SSA's assignment of three (3) Payment Status Codes ("PSC Codes") C01, M01, and M02—to the exclusion of seventy-four (74) other

PSC Codes that SSA assigns to SSI enrollees, to identify patients "entitled" to SSI benefits—conflicts with the DSH statute's mandates.[3]

75.    Plaintiffs established that the Secretary erroneously relies on SSA PSC Codes C01, M01, and M02, and excludes all others, to determine whether inpatients were entitled to SSI benefits during their hospitalization, resulting in the nonsensical and categorical exclusion of numerous low-income patients from the numerator of the Medicare fraction.   Specifically, in reliance on the SSA's assignment of only three particular PSC Codes, the Secretary excludes from the DSH calculation SSI enrollees for reasons wholly unrelated to their qualification for and entitlement to SSI benefits.

76.    The Secretary's policy excludes SSI enrollees entitled to receive their SSI checks but for whom SSA is uncertain of their current address or representative payee, so their checks are held until this information is verified.   PSC Code S06, for example, is applied by the SSA in instances where SSI payment has been suspended because the SSI enrollee's address is unknown. *See* 75 Fed. Reg. 50,275, 50,280 (Aug. 16, 2010).   The fact that an SSI enrollee's address is unknown, however, provides no basis to deny SSI payment under the applicable regulations.  *See* 20 C.F.R. §§ 416.207-416.216.   The fact that an SSI enrollee's address is unknown is not one of the reasons specified in the SSI regulations for nonpayment; therefore, no basis exists for the Secretary to exclude these individuals from the numerator of the Medicare fraction.

77.    Providers also established that at the time Congress enacted the DSH statute in 1986, SSI enrollees received SSI checks the month in which they initially qualified for benefits. Since 1996, however, SSI enrollees do not receive SSI payments that first month; rather, they

---

[3] Plaintiffs do not include PSC Codes, *e.g.*, T-Codes, indicating that the enrollee has been terminated from the SSI program.

receive them the month after they qualify for benefits.  In the interim between the time these patients qualify for SSI enrollment and they receive their first SSI payment, however, the SSA codes these patients as "E02," and the Secretary unlawfully excludes them from the Medicare fraction numerator as they clearly meet SSI eligibility criteria.

78.     At hearing the Providers also demonstrated that the Secretary ignores the import of SSI enrollees' automatic enrollment in the Part D Extra Help program and receipt of fully subsidized Medicare Part D benefits, and the incongruity with which these benefits are treated for purposes of the Medicare Act.

79.     By ignoring the fact that: (1) the Medicare Part D Extra Help program provides full payment for Medicare Part D prescription drug coverage to SSI enrollees; (2) SSI enrollees' receipt of Part D Extra Help benefits is immediate upon notification of their SSI enrollment, known as the SSI Award Letter; and (3) once awarded, the SSI enrollees receive the fully subsidized Part D benefits without regard to their receipt of monthly SSI cash benefits, the Secretary reveals his discordant construction of the DSH statute.  The Secretary cannot lawfully exclude such qualified-benefit receiving SSI enrollees from the numerator of the Medicare fraction.

80.     At their March 17, 2015 and September 15, 2015 hearings, the Providers illustrated the dramatic impact the Secretary's arbitrary exclusion of SSI enrollees has on their DSH adjustments by demonstrating—through SSA data—that more than 1 million of the country's total SSI enrollees are subject to payment suspensions of varying lengths in any given year.  Because the Secretary deems them not entitled to SSI benefits under his narrow construction of the DSH statute, any of these otherwise qualified Medicare Part A and SSI-enrolled individuals would be excluded from the numerator of the Medicare fraction for the days of their hospitalizations.

81.     On March 27 and 28, 2017, the PRRB issued its decisions in the Plaintiffs' combined appeals.  *See* **Exhibit 2** and **Exhibit 3**.  The PRRB concluded it lacked authority to review or mandate specific revisions to CMS' data matching process because it was constrained by CMS rulemaking under CMS Rulings 1498-R and 1498-R2.  Accordingly, the Board held that it did not have the authority to reverse the Medicare Administrative Contractors' adjustments.  ***Id.***

82.     The CMS Administrator reviewed the Board's decisions and modified them substantively and procedurally.  *See* **Exhibit 1**.

83.     First, the Administrator issued a substantive ruling, denying the Plaintiffs' requested relief with respect to CMS' interpretation and application of "entitled to supplemental security income benefits" in the numerator of the Medicare fraction.

84.     Adopting the Secretary's reasoning in the FFY 2011 IPPS final rule, the Administrator rejected the Plaintiffs' challenges to the Secretary's exclusive reliance on only SSA PSC Codes C01, M01, and M02 to identify patients "entitled" to SSI benefits for purposes of inclusion in the numerator of the Medicare fraction, and disregarded Providers' evidence establishing that SSI enrollees assigned one of the other 74 PSC Codes remain entitled to SSI benefits, but simply are assigned another PSC Code to indicate, for example, that they have either moved (PSC Code S06) or are currently repaying another government obligation under the Cross-Program Recovery (PSC Code E01).

85.     While relying on the Secretary's reasoning in the FFY 2011 IPPS final rule to support the exclusion of these SSI enrollees, the CMS Administrator failed to address or even acknowledge that the excluded SSI enrollees are entitled to receive fully subsidized Medicare Part D benefits as a result of their SSI enrollment, irrespective of their receipt of the monthly SSI stipend.

86.     Second, the Administrator issued a procedural ruling, vacating the Board's jurisdictional findings, and remanding Provider appeals from NPRs or RNPRs dated prior to April 28, 2010, the date CMS Ruling 1498-R was issued, for reprocessing by the MACs.  For these reasons, claims related to 57 fiscal years have been remanded to the Board and await further administrative action; however, claims for the remaining 513 fiscal years the Plaintiffs appealed following receipt of NPRs or RNPRs issued after April 28, 2010, are subject to the Secretary's final administrative action and are now ripe for review.

87.     The CMS Administrator's Decision was received by counsel, on behalf of the Plaintiffs, on June 2, 2017.  *See* **Exhibit 1**.  The Plaintiffs' administrative rights have therefore been exhausted and this matter is now ripe for judicial review.

88.     This Complaint has been timely filed within 60 days of receipt of the CMS Administrator's determination, as required by 42 U.S.C. § 1395*oo*(f)(1).

## COUNT I

### The Secretary's Construction of the DSH Statute Contravenes the Statute's Plain Language

89.     Plaintiffs repeat and reallege paragraphs 1-88 as if set forth fully herein.

90.     The Medicare statute provides for judicial review of the Secretary's final determination on Medicare program reimbursement under 42 U.S.C. § 1395*oo*(f)(1).

91.     The Administrative Procedure Act provides that the reviewing court shall hold unlawful and set aside agency action found to be: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) in excess of statutory jurisdiction, authority, or limitations or short of statutory right; (3) without observance of procedure required by law; or (4) unsupported by substantial evidence.  5 U.S.C. § 706(2).

92.     The Secretary's construction of the DSH statute since 2004 draws a baseless distinction between Medicare Part A enrollees and SSI enrollees.  Under the current construction of the DSH statute, the Secretary maintains that the phrase "entitled to benefits under part A" is a term of art that broadly encompasses days for which Medicare Part A makes no payment, including Medicare Exhaust days, Medicare Secondary Payer days and Medicare Advantage Plan days.  That broad interpretation of "entitlement to benefits" must apply equally to Medicare beneficiaries who are SSI enrollees.

93.     Medicare Part A beneficiaries enrolled in SSI meet the qualifying statutory criteria for SSI entitlement and are eligible for the program on the basis of their income, resources, age and/or disability.  *See* 42 U.S.C. §§ 1381a & 1382.  Consequently, because the term "entitled" in the DSH statute has been interpreted to mean meeting the eligibility criteria for a benefits program and does not require payment of benefits from the program, the plain language requires that all SSI enrollees be deemed entitled to SSI benefits and be included in the numerator of the Medicare fraction.

94.     SSI beneficiaries who were enrolled in the SSI program but who did not receive an SSI cash payment for the month during which they were hospitalized, *i.e.*, those assigned a PSC Code other than C01, M01, or M02, remain entitled to benefits, including fully subsidized Medicare Part D Prescription Drug benefits, and their inpatient hospital days must be counted in the numerator of the Medicare fraction.

95.     Because the Secretary's conflicting interpretations and application of the term "entitled" contravenes the Medicare DSH statute and frustrates Congressional intent, it is due no deference under *Chevron U.S.A., Inc. v. Nat'l Res. Def. Council, Inc*., 467 U.S. 837 (1984), and is invalid under 5 U.S.C. § 706.

## COUNT II

### The Secretary's Interpretation of the DSH Statute is Arbitrary and Capricious and, Therefore, Invalid Under Both the Administrative Procedure Act and the Medicare Act

96.    Plaintiffs reallege and reincorporate paragraphs 1-95 above as if set forth fully herein.

97.    The Secretary's action is subject to judicial review pursuant to the applicable provisions of the APA.  42 U.S.C. § 1395*oo*(f)(1).

98.    Under the APA, a reviewing court must set aside agency action if, *inter alia,* it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

99.    The Secretary's decision must be set aside as arbitrary and capricious because it is inconsistent with his prior and subsequent interpretations of the statute as codified in his 2004 amendment to 42 C.F.R. § 412.106(b)(2)(i).  *See* 69 Fed. Reg. 49,009, 49,098-99 (Aug. 11, 2004).

100.    By striking the term "covered" from the DSH regulation, 42 C.F.R. § 412.106(b)(2)(i), the Secretary sought to clarify his construction of the DSH statute by removing any requirement that Medicare Part A cover or pay for the patient's hospitalization, and by allowing for Medicare Exhaust days, for example, to be included in the Medicare fraction because the patient still qualified for Medicare Part A benefits under the Secretary's expanded view of the term "entitled."

101.    Yet, following his elimination of the term "covered" from the DSH regulation, the Secretary failed to apply and harmonize his expanded construction of the term  "entitled to [P]art A benefits" to "entitled to SSI benefits."   In failing to consider the impact of the change, or incorporate his expanded construction of the term "entitled" to SSI enrollees, or provide any

explanation for his differing interpretations, the Secretary's action was arbitrary and capricious and not in accordance with law under 5 U.S.C. § 706(2)(A).  *See also* 42 U.S.C. § 1395hh(a)(1)-(4).

102.   The problems attendant to the Secretary's reliance solely on the SSA PSC Codes C01, M01 and M02, were identified and challenged in comments to the 2011 proposed rule, *see* 75 Fed. Reg. 50,002, 50,279-82 (August 16, 2010), yet the Secretary, and the Administrator on review, chose to ignore the fact that SSI enrollees assigned PSC Codes other than C01, M01 and M02 should be deemed entitled to SSI benefits for purposes of inclusion in the numerator of the Medicare fraction.  Moreover, on review, the Administrator failed to address or even acknowledge that since 2006, SSI enrollees on Medicare receive fully subsidized Medicare Part D benefits as a result of their SSI enrollment and irrespective of their receipt of a monthly SSI stipend.  In so doing, the Secretary's action was arbitrary and capricious and not in accordance with law under 5 U.S.C. § 706(2)(A).

103.   The Secretary's decision must be set aside because it ignores other benefits, including Medicare Part D Extra Help program benefits, received by SSI enrollees, and results in the unlawful omission of low-income patients Congress intended to capture in the DSH computation.

104.   The Secretary's decision must be set aside because it ignores CMS' own acknowledgment that upon receipt of an SSI award letter, a Medicare beneficiary is entitled to fully subsidized Medicare Part D benefits because that beneficiary is an SSI enrollee.

105.   As a result of the Secretary's conduct, the Plaintiffs have been harmed by the reduced disproportionate patient percentage and resulting reduction in Medicare payments.

## COUNT III

### Mandamus to Recalculate Providers DPP and to Produce All SSI Entitlement Data

106.    Plaintiffs reallege and reincorporate paragraphs 1-105 above as if set forth fully herein.

107.    In addition to erroneously construing the DSH statute to systematically reduce the number of SSI enrollees, the Secretary has also violated section 951 of the Medicare Modernization Act, which requires him to provide the Plaintiffs with all information needed to calculate the DSH computation.  *See* Medicare Prescription Drug Improvement and Modernization Act of 2003, Pub. L. No. 108-173.

108.    As the Plaintiffs established at hearing, the Secretary has access to the SSI eligibility data, including every Medicare patient's PSC Codes for all SSI enrollees, but has refused to release these data, even after multiple Freedom of Information Act requests, based on contractual and privacy considerations.  *See also* 70 Fed. Reg. 47,438-47,451 (Aug. 12, 2005).

109.    Plaintiffs sought to obtain relevant data from alternative sources, including SSA, MedPAC and MACPAC, to establish an approximate measure of the number of SSI-eligible Medicare beneficiaries who qualified for entitlement to SSI benefits but were omitted from the numerator of the Medicare fraction.  Their data demonstrate that the Secretary has undercounted the number of SSI-entitled patients.

110.    The Secretary must provide Plaintiffs with access to the SSI enrollment data which is furnished to the Secretary by the SSA.  Section 951 of the Medicare Prescription Drug Improvement and Modernization Act of 2003, Pub. L. No. 108-173, required HHS to arrange by December 8, 2004 to furnish providers with the data necessary to compute the number of patient days used in calculating the DPP.

111.    The requirements of Section 951 may be satisfied only by furnishing providers with access to the SSI entitlement files which are provided by the SSA to the Secretary, including each patient's assigned PSC code.  No legal remedies exist to compel the disclosure; accordingly, the Plaintiffs may seek relief by way of a writ of mandamus.

112.    As a result of the Secretary's conduct, the Plaintiffs have been harmed by way of their reduced disproportionate patient percentages and resulting reduced Medicare payments. Specifically, the Plaintiffs have been deprived of the tools required to establish that the Secretary is under-reporting the patient days in their low-income proxy, which results in lower DSH adjustments.

113.    Plaintiffs are therefore entitled to a writ of mandamus pursuant to 5 U.S.C. § 706(1) and 28 U.S.C. § 1361 for purposes of directing the Secretary to furnish such data relating to Medicare beneficiaries enrolled in the SSI program that are excluded from the SSI entitlement count because they are assigned one of the other 74 PSC codes that indicate a temporary suspension of SSI payment.

114.    Plaintiffs are entitled to a writ of mandamus directing the Secretary recalculate their DPP to include in the Medicare fraction of the DSH statute all Medicare beneficiaries enrolled in the SSI program.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order for Declaratory Judgment:

a.    declaring invalid the Secretary's construction of the term "entitled to supplemental security income benefits" with respect to the composition of the Medicare fraction;

b.    directing the Secretary to furnish the Plaintiffs with CMS data from the Social Security Administration to identify the PSC Codes of all SSI enrollees who were entitled to

Part A and who received inpatient hospital services from the Plaintiffs during the cost report years at issue;

        c.      directing the Secretary to recalculate all of the Plaintiffs' Medicare fractions to include all SSI-enrolled patient days in the numerator of the Medicare fraction;

        d.      requiring the Secretary to pay interest on the amount due them pursuant to 42 U.S.C. § 1395*oo*(f)(2); and

        e.      providing such other relief as the Court may deem proper and just.

Dated this 27th day of July, 2017.

                             Respectfully Submitted,

                             _____/s/ Daniel Miller_____
                             Daniel F. Miller, D.C. Bar No. WI0032
                             N. Kent Smith, D.C. Bar No. IN177749
                             HALL, RENDER, KILLIAN, HEATH & LYMAN, P.C.
                             111 East Kilbourn Avenue, Suite 1300
                             Milwaukee, WI  53202
                             Telephone:    (414) 721-0442
                             Facsimile:     (414) 721-0491
                             Email:  dmiller@hallrender.com
                             Email:  ksmith@hallrender.com

                             *Attorneys for Plaintiffs*